**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**KEITHEN L. JONES**                                              **PLAINTIFF**
**ADC# 85316**

**VS.**                        **CASE NO.: 4:05CV00962 BSM/BD**

**RANDY JOHNSON,** *et al.*                                    **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I**.       **Procedure for Filing Objections:**

       The following recommended disposition has been sent to United States District

Judge Brian S. Miller.  Any party may serve and file written objections to this

recommendation.  Objections should be specific and should include the factual or legal

basis for the objection.  If the objection is to a factual finding, specifically identify that

finding and the evidence that supports your objection.  An original and one copy of your

objections must be received in the office of the United States District Court Clerk no later

than eleven (11) days from receipt of the findings and recommendations.  A copy will be

furnished to the opposing party.  Failure to file timely objections may result in waiver of

the right to appeal questions of fact.

       If you are objecting to the recommendation and also desire to submit new,

different, or additional evidence, and to have a hearing for this purpose before the District

Judge, you must, at the same time that you file your written objections, include the

following:

       1.       Why the record made before the Magistrate Judge is inadequate.

    2.      The details of any testimony desired to be introduced at the hearing before the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite 402
> Little Rock, AR 72201-3325

## II.     **Introduction**:

Defendant Shawn Smith has filed a Motion for Summary Judgment (docket entry #186); Defendants Andrea Carter, Rodney Ford, Jim Williams, and Elizabeth Taylor have separately filed a Motion for Summary Judgment (#194).  Plaintiff has responded (#205, #207), and Defendants have replied (#211, 214).  For the following reasons, the Court recommends that Defendants' Motions for Summary Judgment (#186, 194) be GRANTED and the claims against the Defendants be DISMISSED with prejudice.

## III.     **Procedural History**:

Plaintiff filed this action *pro se* under 42 U.S.C. § 1983 while confined to the Arkansas Department of Community Correction, Omega Technical Violator Center (TVC).  The Court entered an order on October 13, 2005 (#6) dismissing Plaintiff's Complaint under Local Rule 5.5(c)(2).  The Plaintiff appealed the dismissal, and the

2

Eighth Circuit reversed and remanded the case for further proceedings, holding that the district court's dismissal was inappropriate under Local Rule 5.5 (c)(2) because the Court had not issued an order requiring the Plaintiff's response.

After remand, Defendants filed a Motion to Dismiss (#68) and an Amended Motion to Dismiss (#95). The Court denied the Motion to Dismiss as moot. The Court granted in part Defendants' Amended Motion to Dismiss (#113, 119). This left the following claims remaining in this action: (1) a retaliation claim against Defendants Carter, Ford, Taylor, and Smith; and (2) a Due Process claim against Defendant Williams.

Defendants filed another Motion to Dismiss (#160), which the Court denied (#176, #184). Defendants then filed the pending Motions for Summary Judgment (#186, 194). The Court held an evidentiary hearing to allow Plaintiff an opportunity to question the Defendants under oath and rebut the arguments made in the pending summary judgment motions (#198). After the hearing, Plaintiff responded to the motions for summary judgment (#205, 207) and Defendants replied (#211, 214).

**IV.    <u>Background</u>:**

The two pending claims arose after Plaintiff's release from the Tucker Unit of the Arkansas Department of Correction (ADC) on March 23, 2005. On that day, and again on March 24, 25, and 28, 2005, Plaintiff went to the area parole office to meet with his

parole officer, Defendant Carter.[1]  Defendant Carter was not available to meet with

Plaintiff until April 1, 2005.  On that day, Plaintiff went into the office to meet Defendant

Carter.  According to allegations in the Complaint, after waiting five minutes to see

Defendant Carter, she approached Plaintiff while cursing loudly and holding her hand on

her firearm.  At some point, Defendant Carter allegedly stated that all she had for Plaintiff

was the TVC or a hearing.[2]  After this comment, Plaintiff requested, received, and

completed a grievance form.[3]  Plaintiff submitted the grievance to Sheila Laws and

Defendant Taylor.  Defendant Carter then allegedly informed Plaintiff that the entire

parole office disliked him, and that his grievance would be used as toilet paper.

Thereafter, Defendant Carter made Plaintiff see her everyday, "passing" him to Parole

Officers Melissa Lancaster and Kevin Amerine, until Plaintiff was hired at the State

House Convention Center.

---

[1] Defendants dispute that Plaintiff came into the parole office before April 1, 2005.  For the purposes of summary judgment, however, the Court will view any disputed facts in the light favorable to Plaintiff.

[2] Plaintiff interpreted this comment as a threat to send him to the TVC or to revoke his parole.

[3] All of the Defendants deny seeing, receiving, or being aware of a grievance from Plaintiff in this matter.  Defendant Ford did remember Plaintiff verbally complaining to him about Defendant Carter's conduct.  For purposes of summary judgment, the Court assumes Plaintiff did in fact file the grievance.

On June 10, 2005, nine parole officers, including Defendants Carter, Ford, and Taylor,[4] went to Plaintiff's grandmother's house with guns drawn and detained him. Plaintiff states that the parole officers then conducted an illegal search of his grandmother's residence.  Plaintiff alleges that Defendants Carter, Taylor, Ford, and Smith engaged in a conspiracy to jail him until his parole revocation hearing in retaliation for filing the grievance, when standard protocol is not to jail pending parole holds. Plaintiff did not hear anyone talk to Defendant Smith about holding him and no one gave Plaintiff a reason for the detention.

While detained, Plaintiff was given notice that his parole revocation hearing would be held on June 14, 2005.  Plaintiff alleges that Kevin Amerine and Defendant Taylor made false accusations that Plaintiff admitted using marijuana and violating a protective order.  Plaintiff also alleges that Defendant Williams, the parole hearing officer, denied Plaintiff's request for time to hire counsel and to present documents and evidence on his own behalf.  Plaintiff states that he "was violated and sent to TVC (by waiver)."

The parties dispute whether a parole revocation hearing ever occurred.  Plaintiff states that a hearing started, then after Defendant Williams denied his requests, Plaintiff signed a waiver of hearing.  Defendant Williams states that no hearing occurred because Plaintiff waived his right to a hearing.  Plaintiff does admit, however, that he signed a waiver of his right to a hearing.

---

[4] Defendants Carter and Taylor deny being present at Plaintiff's grandmother's house.

V.       **Summary Judgment Standard:**

Summary judgment is appropriate when there is no genuine issue of material fact,

and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).

The Supreme Court has established guidelines to assist trial courts in determining whether

this standard has been met:

> The inquiry performed is the threshold inquiry of determining
> whether there is the need for a trial - whether, in other words,
> there are any genuine factual issues that properly can be
> resolved only by a finder of fact because they may reasonably
> be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511 (1986).  In

reviewing a motion for summary judgment, the Court must view the facts in a light most

favorable to the nonmoving party and give that party the benefit of all reasonable

inferences to be drawn from the record.  *Vette Co. v. Aetna Cas. & Sur. Co.*, 612 F.2d

1076, 1077 (8th Cir. 1980).

The moving party bears the initial burden of identifying the evidence which it

believes demonstrates the absence of a genuine issue of material fact.  *Webb v. Lawrence*

*County*, 144 F.3d 1131, 1134 (8th Cir. 1998).  This burden may be discharged by showing

that there is an absence of evidence to support the non-moving party's case.  *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554 (1986).  Once the moving party

carries this burden, the non-moving party "must do more than simply show that there is

some metaphysical doubt as to the material facts." *Matsushita Elec. Inc. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356 (1986).

> When a motion for summary judgment is made and supported as
> provided in this rule, an adverse party may not rest upon the mere
> allegations or denials of the adverse party's pleadings, but the
> adverse party's response, by affidavits or as otherwise provided in
> this rule, must set forth specific facts showing that there is a genuine
> issue for trial. If the adverse party does not so respond, summary
> judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e). The judge does not weigh the evidence, but rather determines

whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

249, 106 S.Ct. 2505, 2511 (1986).

> [T]here is no issue for trial unless there is sufficient evidence
> favoring the nonmoving party for a jury to return a verdict for that
> party. If the evidence is merely colorable, or is not significantly
> probative, summary judgment may be granted.

*Id*. at 249-250.

The parties dispute several facts related to the claims in this matter. For purposes

of summary judgment, the Court resolved these disputes in favor of Plaintiff, the

nonmoving party. These disputes are immaterial, because under either version of the

facts, the outcome is the same.

## VI.    Analysis of Claims:

Plaintiff's retaliation claim consists of three incidents. First, Plaintiff alleges

Defendants Carter, Taylor, and Ford arrested him and searched his grandmother's home

because he filed the disputed grievance. Second, Plaintiff alleges that Defendants Carter,

Taylor, and Ford conspired with Defendant Smith to detain Plaintiff pending his parole revocation hearing in retaliation for filing the grievance.  Finally, Plaintiff alleges Kevin Amerine and Defendant Taylor made false accusations to justify Plaintiff's parole revocation, also in retaliation for filing the grievance.

Plaintiff's second claim is that Defendant Williams denied Plaintiff minimal due process at his parole revocation hearing.  He alleges that he requested additional time to retain counsel and requested a copy of the grievance from Defendant Taylor to use at his hearing.  Plaintiff also alleges that he wanted to call a neighbor as a witness.  According to Plaintiff, Defendant Williams denied all of these requests.

A.  **Retaliation**:

All of the "retaliatory" conduct Plaintiff complains of was lawful and constitutional standing alone.  Defendants arrested Plaintiff at his grandmother's home in furtherance of a validly issued and executed abscond warrant.  Plaintiff was lawfully subject to detention pending his parole revocation hearing.  Plaintiff's claim that Defendant Taylor made a false accusation against him is not itself actionable.  *Sprouse v. Babcock*, 870 F.2d 450, 452 (8th Cir. 1989).  Otherwise constitutional conduct, however, is unconstitutional if performed in retaliation for the exercise of a constitutionally protected right.  See *Nei v. Dooley*, 372 F.3d 1003, 1007 (8th Cir. 2004) (per curiam) (retaliatory conduct against the exercise of a constitutionally protected right is actionable, even if the conduct itself is not unconstitutional and the conduct would be proper if

motivated by non-retaliatory reason); see also *Sprouse*, 870 F.2d at 452 (8th Cir. 1989) (conduct not otherwise actionable under § 1983, is actionable under § 1983 if done in retaliation for filing grievance, as this violates right of access to courts and First Amendment rights).

In order to succeed on a § 1983 retaliation claim, Plaintiff must prove that he engaged in constitutionally protected activity, and that, in retaliation, Defendants took adverse action against Plaintiff that would chill a person of ordinary firmness from engaging in the protected activity. *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007).

Filing a grievance is protected First Amendment activity. See *Dixon v. Brown*, 28 F.3d 379 (8th Cir. 1994) (filing a prison grievance is protected First Amendment activity). Being arrested, detained, and having parole revoked would probably chill a person of ordinary firmness from filing additional grievances. Plaintiff is not required to show any injury resulting from the alleged retaliation. *Dixon v. Brown*, 28 F.3d 379, 380 (8th Cir. 1994). Plaintiff is required to show, however, that the adverse action was motivated at least in part by the exercise of the protected activity. *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004), *cert.* denied, 546 U.S. 860, 126 S.Ct. 371 (2005). To make this showing, Plaintiff must provide affirmative evidence of a retaliatory motive. *Wilson v. Northcutt*, 441 F.3d 586, 592 (8th Cir. 2006).

The undisputed record shows that Plaintiff was released from the Tucker Unit of the ADC on March 23, 2005. On March 25, 2005, Plaintiff checked out of the

9

Lighthouse Halfway House, Plaintiff's approved residential facility.  On March 30, 2005,

Defendant Carter applied for an abscond warrant for Plaintiff's arrest and revocation

(#194-5).  The same day, Plaintiff and Defendant Carter spoke by telephone.  Defendant

Carter informed Plaintiff of the abscond warrant and advised him to reside at Life

Changes Halfway House until further notice.

On April 1, 2005, Plaintiff met with Defendant Carter for the first time in the

parole office.  This is the meeting in which Plaintiff alleges he filed the disputed

grievance after being verbally harassed and threatened by Defendant Carter (#208, p. 10,

43-44).[5]  The same day, Plaintiff met with Defendant Ford, Defendant Carter's

supervisor, and complained about how Defendant Carter had treated him (#194-3, p. 3).

On April 2, 2005, Plaintiff was arrested for Theft of Services (not paying for a cab ride),

Disorderly Conduct, and Public Intoxication (#194-3, p. 4).  Plaintiff was released the

next morning.  On April 4, 2005, Plaintiff tested positive for marijuana and cocaine

(#194-3, p. 4).  On April 5, 2005, the Arkansas Post Prison Transfer Board issued the

pending abscond warrant (#194-7).  On the same day, Plaintiff was kicked out of Life

Changes (#194-3, p. 5).  Plaintiff then checked into the Hoover House.  On April 12,

2005, Plaintiff was discharged from Hoover House.  Defendant Carter then transferred

Plaintiff's file to Melissa Lancaster, who was responsible for handling parolees with

---

[5] Defendants state that Plaintiff never filed a grievance.  The Court cannot decide factual
disputes when analyzing summary judgement motions.  Accordingly, the Court assumes
Plaintiff filed the grievance as alleged.

outstanding abscond warrants, continuing violations, and unknown whereabouts (#194-8, p. 3).

Plaintiff then began residing at GYST house.  On April 20, 2005, Plaintiff was terminated from the GYST House program (#194-3, p. 8).  Plaintiff then reported living at his mother's house.  His mother denied that he lived with her, and Parole Officers were unable to locate Plaintiff (#194-3, p. 9).  On April 24, 2005, Plaintiff was arrested for Obstruction of Government Operations and Criminal Trespass (#194-3, p. 10).  He was released several hours later.  On June 4, 2005, Plaintiff was arrested for Failure to Appear to answer charges relating to one of his previous arrests (#194-3, p. 11).  On June 6, 2005, Plaintiff was released from detention for his Failure to Appear arrest.  On June 10, 2005, several Parole Officers executed the abscond warrant at Plaintiff's grandmother's residence (#194-3, p. 12; #194-7).  After this arrest, Plaintiff was detained until his parole revocation hearing on June 14, 2005.

The record does not provide any evidence of a causal connection between the disputed grievance and Plaintiff's arrest.  Defendant Carter applied for the abscond warrant before Plaintiff filed the grievance.  Additionally, all of Defendant Carter's allegedly abusive behavior occurred before Plaintiff filed the grievance.  In the two months between filing of the grievance and Plaintiff's arrest, Plaintiff tested positive for drug use, was kicked out of at least three halfway houses, did not have an approved residence, and was arrested several times.  While Plaintiff is entitled to a favorable view

of the evidence, he must substantiate his allegations with sufficiently probative evidence to avoid summary judgment. *Moody v. St. Charles County*, 23 F.3d 1410, 1412 (8th Cir. 1994). He has not done so. Accordingly, summary judgment should be granted on this claim.

Plaintiff's next allegation is that Defendants Carter, Taylor, and Ford conspired with Defendant Smith to detain Plaintiff, pending his revocation hearing, in retaliation for filing the grievance. At the time relevant to this action, Defendant Smith was the Major of Detention at the Pulaski County Regional Detention Facility (PCRDF). In this position, he had the authority to decide whether to accept arrested individuals into the PCRDF. Defendant Smith does not remember the circumstances surrounding Plaintiff's booking, but acknowledges that he was the only person at the time who could have made the decision to hold Plaintiff. Defendant Smith testified that he was probably given a reason to hold Plaintiff because he ordinarily would not accept parole holds unless given a reason to do so.

Plaintiff was arrested as the result of a "parole hold-no bond" arrest report. At the time of his arrest, the jail was "open," meaning that it had capacity to accept more classes of detainees than when "closed." Regardless of jail status, the PCRDF has a general policy not to honor "parole holds," *i.e.* persons who should be jailed pending their parole revocation hearings, in an effort to avoid overcrowding at the PCRDF. Although the general policy is not to honor parole holds, some parole violators are detained until their

12

parole revocation hearing.  At the time of the evidentiary hearing, three parole holds were housed in the PCRDF.

Plaintiff alleges he was held in PCRDF because Defendants Smith and Taylor had a "special relationship."  Defendant Smith testified that he does not know Defendant Taylor personally.  In addition, Plaintiff never filed a grievance against Defendant Taylor. His only grievance was filed against Defendant Carter.  Even if Defendants Taylor and Smith had a relationship, that would not be evidence that Defendant Smith conspired with Defendant Taylor to retaliate against Plaintiff for filing a grievance against Defendant Carter.  The only other "evidence" Plaintiff puts forward to support this retaliation claim is that the PCRDF general policy not to detain parole holds.  Of course, a state officer's failure to follow state policy is not itself actionable under § 1983.  *Kennedy v. Blankenship*, 100 F.3d 640, 643 (1996).

As Defendant Smith testified, Plaintiff is not the only parole hold to be detained in the PCRDF pending his or her parole revocation hearing.  While Defendant Smith does not remember Plaintiff's booking, Defendant Smith testified that he would not honor a hold because a parole officer had a grudge against the parolee (#208, p. 77).  In addition, Defendant Smith testified that he would not honor a hold as a favor to an officer (#208, p. 77).

At the time of his arrest, Plaintiff did not have an approved residence to return to upon release.  Plaintiff had already been kicked out, or checked himself out, of several

13

halfway houses.  The arrest on June 10, 2005, that ultimately led to Plaintiff's detention, was the fourth time Plaintiff had been arrested since his March 23, 2005 release from the ADC.  One of the previous arrests was for Failure to Appear in court.

Plaintiff admits he cannot show that any of the Defendants told Defendant Smith to detain him for filing a grievance (#208, p. 14-15).  In fact, the record does not contain any evidence that Plaintiff's detention in the PCRDF was related to the grievance he filed two months earlier against Defendant Carter.  All of the Defendants' testimony stands uncontroverted on this claim.  Viewing these facts in the light most favorable to Plaintiff, this claim should be dismissed.

The final claim of retaliation is that Defendant Taylor falsely accused Plaintiff of parole violations to justify Plaintiff's revocation.  Filing a false violation report is not actionable in and of itself, but is actionable if done in retaliation for filing a grievance.  *Sprouse*, 870 F.2d at 452.  As with the other retaliation claims, there is no evidence linking the violation report to retaliation for filing the grievance.

The parole revocation notice stated that Plaintiff admitted using marijuana and failed to cooperate with his supervising officer by living at his grandmother's house after being instructed not to have contact with her (#194-13, p. 2).  Plaintiff's Complaint states that Defendant Taylor "forged" documents against Plaintiff (#2, p. 8).  Plaintiff clarified this allegation at the evidentiary hearing and testified that he was falsely accused of violations, but that no documents were forged (#208, p. 18).  At the hearing, Plaintiff also

14

stated that it was actually Defendant Carter, not Defendant Taylor, who made the allegedly false accusations (#208, p. 16).

Plaintiff did, in fact, test positive for marijuana and cocaine use (#194–3, p. 4). Plaintiff admitted as much (#208, p. 18).  Even if this allegation was not true, there is no evidence linking the allegation of drug use to the alleged retaliation for filing the grievance.

Defendant Carter testified that requiring Plaintiff to stay away from his grandmother was never a condition of Plaintiff's parole (#208, p. 48)  Yet, Plaintiff's interaction with his grandmother was listed as a violation of his parole (#194-13, p. 2). This confusion appears to stem from false information provided to Defendant Carter. Detective Simpson, of the Little Rock Police Department, informed Defendant Carter that Plaintiff's grandmother had a protective order against Plaintiff (#194-3, p. 5, 9; #208, p. 47).  It appears there had been such a protective order at one time, but the protective order had lapsed.  While this false accusation clearly offended Plaintiff, it does not provide evidence of a retaliatory motive by the Defendants.  Accordingly, this claim should also be dismissed.

### B.  Due Process:

The pending Due Process claim concerns Plaintiff's requests at his parole revocation hearing.  Plaintiff alleges he requested time to hire an attorney, to secure the appearance of witnesses, and to provide documentary evidence in his defense.  Plaintiff

claims that Defendant Williams violated his Due Process rights by denying all of these requests.  Plaintiff alleges that, as a result this denial, he waived his right to a parole revocation hearing.

A parolee facing a revocation hearing has a clearly established right to minimal Due Process.  *Morrissey v. Brewer*, 408 U.S. 471, 483-491, 92 S.Ct. 2593 (1972). Plaintiff's minimal Due Process rights include:

> (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a 'neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. *Id.* at 489.

Defendant Williams correctly states that Plaintiff had no right to appointed counsel at the parole revocation hearing.  Plaintiff consistently states, however, that he asked for time to retain counsel, not that he was seeking appointed counsel.  While there is no right to appointed counsel, Plaintiff must be allowed to retain an attorney if he desires.  *Cf. Goldberg v. Kelly*, 397 U.S. 254, 270, 90 S.Ct. 1011 (1970) (stating that recipients of public aid must have the opportunity to retain an attorney for the public assistance termination hearing if they so desire).

Defendant Williams also claims to be entitled to absolute immunity, regarding any action or inaction, under *Anton v. Getty*, 78 F.3d 393 (8th Cir. 1996).  Defendant

16

Williams' reading of *Anton* would effectively eviscerate the minimal Due Process rights affirmed in *Morrissey*. *Anton* does not stand for the proposition that a parole hearing officer cannot be liable for anything at anytime.  Instead, *Anton* provides Defendant Williams absolute immunity when deciding to grant, deny, or revoke parole. *Anton*, 78 F.3d at 396.  These quasi-judicial decisions are comparable to thse of judges and are within the scope of immunity. *Patterson v. Von Reisen*, 999 F.2d 1235, 1237 (8th Cir. 1993).  Of course, the ultimate decision regarding parole is not at issue in this case (#113, p. 10-12).  The only issue is whether or not Defendant Williams denied Plaintiff's clearly established minimal Due Process rights.  Based on the record, he did not.

Plaintiff testified that he asked Defendant Williams to afford him an extension of time to hire counsel and for appointment of counsel.  Plaintiff further testified that he asked to see a mental health doctor (#208, p. 19).  He eventually "waived the right to go through the process because [he] wasn't equipped to prove anything."  (#208, p. 19)

For his part, Defendant Williams testified that there never was a parole revocation hearing (#208, p. 79-80), and that, instead, a parole officer brought Defendant Williams the waiver signed by Plaintiff.  Defendant Williams cites as evidence that a hearing never began the fact that there are no docket notes or disposition forms in Plaintiff's case file. (#208, p. 83-84).

Viewing the evidence as presented by Plaintiff, no Due Process violation occurred. Plaintiff was given written notice of the claimed violations of parole.  He had an

17

opportunity to be heard in person and to present evidence.  Even according to Plaintiff's version of events, the hearing began and Plaintiff asked Defendant Taylor for a copy of his grievance to present as evidence.  The hearing stopped so that Defendant Taylor could retrieve the evidence that Plaintiff requested.  During this recess, Plaintiff waived his right to a hearing.

Plaintiff testified that Defendant Taylor left the room and never came back. During this time when the hearing was delayed for the purpose of retrieving the evidence Plaintiff requested, the option of waiving the hearing was presented.  Plaintiff signed the waiver and the hearing ended (#208, p. 20).  At that point, the need to disclose evidence against Plaintiff vanished.  There were no witnesses called that would have triggered Plaintiff's rights of confrontation and cross-examination.  There is no suggestion that Defendant Williams was anything other than a "neutral and detached" hearing officer. Finally, there was no need for a written statement by Defendant Williams explaining why Plaintiff's parole was revoked.  Plaintiff waived these requirements when he waived his right to a hearing.  In addition, Plaintiff's parole was not actually revoked.  Instead, Plaintiff's waiver allowed him to participate in the Technical Violators Program, which is an alternative to re-incarceration.

The record shows that Plaintiff received the process he was due up until the time he waived the revocation hearing.  Plaintiff cannot freely waive his rights to a hearing and

then claim he did not receive the very process that he waived.  Accordingly, this claim should be dismissed.

**VII.**   **Conclusion:**

The Court recommends that Defendants' Motions for Summary Judgment (#186, 194) be GRANTED and the claims against the Defendants be DISMISSED with prejudice.  The Court further recommends that all other pending motions be denied as moot.

Dated this 19th day of August, 2008.

_____

UNITED STATES MAGISTRATE JUDGE